IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VERNETTA JOHNSTON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-3524 |
| | : | |
| INDEPENDENCE BLUE CROSS, LLC et al. | : : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                 **February 26, 2021**

Plaintiff Vernetta Johnston brings this action pursuant to the Employee Retirement Income Security Act (ERISA) against the plan sponsor and plan administrator of her pension plan which provided her retirement benefits from her 28 years of employment with Independence Blue Cross, LLC. Johnston's remaining claims arise under ERISA § 502(a)(3) for breach of fiduciary duty and disgorgement of profits against Defendants Independence Blue Cross, LLC and the Pension Committee of the Pension Plan of Independence Blue Cross (collectively, Independence). Independence moves for summary judgment on these claims, arguing Johnston waived all claims against it when she signed a Separation of Employment Agreement and General Release (Separation Agreement) upon her retirement from the company. Johnston argues the Separation Agreement does not bar her claims because the Court should consider parol evidence such as statements from Independence representatives informing her she could pursue ERISA claims despite signing the Separation Agreement. Because the terms of the Separation Agreement unambiguously waive Johnston's remaining claims, the Court will grant the motion for summary judgment.

**FACTS**

Johnston began working for Independence Blue Cross on September 25, 1989. At that time, Johnston became a participant in Independence's 1989 Pension Plan. The 1989 Plan provided that

1

Johnston earned her retirement benefits pursuant to a final average compensation formula. Johnston voluntarily resigned from Independence on February 14, 2001.

During Johnston's early employment, Independence amended its pension benefits formula. With the change, employees hired on or after January 1, 2000, received benefits under a cash balance formula, and the final average compensation formula was no longer used.

Five months after Johnston's voluntary resignation, Independence offered to rehire her on July 27, 2001. During the negotiations surrounding her reemployment, at least two representatives informed Johnston that her benefits would remain the same as they were during her previous period of employment. Johnston was informed that if she returned to Independence Blue Cross within six months, her previous benefits would be preserved. As a result, Johnston was rehired on August 13, 2001—exactly one day before the six-month anniversary of her retirement. In her offer letter, Independence Blue Cross stated Johnston would be enrolled in the "pension plan." The letter did not specify that her benefits calculation had changed since her previous employment nor did it state which formula would govern her pension benefits.

Later, in October 2017, Johnston elected to participate in Independence's voluntary severance program with an exit date of January 31, 2018. Independence calculated Johnston's benefits using the cash balance formula for the benefits accrued during the duration of her employment after she was rehired in 2001. Johnston believed this was in error and requested information about her reemployment. She then initiated a claim for recalculation of her retirement benefits using the final average compensation formula for her full 28-year tenure with the company.

In a January 5, 2018, email, Johnston inquired as to whether she should sign and submit her paperwork for retirement. She also asked whether doing so would affect the appeal of her

pension benefits. *See* Cashman Decl. Ex. E, ECF No. 33-7. An Independence representative responded on January 9, 2018, stating:

> You should return signed paperwork by January 12 to commence distribution of your pension on your exit date if you wish to receive retiree medical benefits commencing at the end of your severance period. Your election to commence distribution of your pension at this time will not impact your benefit calculation claim. The amount of your pension will be based on your accrued benefit in our records and will be adjusted only if your benefit calculation claim is later approved.

*Id.*

While Independence reviewed Johnston's administrative claim for benefits, Johnston's employment ended on January 31, 2018. As is required to participate in the voluntary severance program, Johnston executed a Separation Agreement which provided her with severance payments of $178,877.28 and a lump sum pension benefit of $247,530.40. *See* Cashman Decl. ¶¶ 29, 37; Cashman Decl. Ex. C, ECF No. 33-5 (Separation Agreement). Johnston had 45 days to review the Separation Agreement prior to signing it and seven days to revoke it after signing. *See* Separation Agreement §§ 12, 12.4. She also had the opportunity to consult an attorney prior to signing. *See id.* § 12. Johnston received her pension benefit on February 1, 2018. *See* Cashman Decl. Ex. F, at 1, ECF No. 33-8.

> The Separation Agreement has a general waiver and release clause. That clause states:
>
> <u>General Waiver and Release.</u>  Employee hereby RELEASES, AND FOREVER DISCHARGES Independence, together with its past and present parents, subsidiaries and affiliates, and its and their officers, directors, employees, agents, predecessors, shareholders, partners, successors, assigns, heirs, executors and administrators (hereinafter referred to collectively as "Releasees"), of and from any and all manner of actions and causes of actions, suits, debts, claims and demands whatsoever in law or in equity, which Employee ever had, now has or hereafter may have, whether or not now known to Employee, or which Employee's heirs, executors or administrators hereafter may have, by reason of any matter, cause, or thing whatsoever from the beginning of time until the execution date of this Agreement.

Separation Agreement § 4. The clause also explicitly covers the following claims:

3

> (a) any and all claims concerning or relating in any way to Employee's employment relationship or the termination of Employee's employment relationship with Independence;
> (b) any and all claims of . . . misrepresentation, fraud, detrimental reliance, breach of contractual obligations
> . . .
> (d) any and all claims of violation of any federal, state and local law relating to recruitment, hiring, terms and conditions of employment, and termination of employment; . . . and
> (g) any common law claims now or hereafter recognized.

*Id.* § 4.1.

The Separation Agreement contains an exemption clause to the general waiver and release. The clause allows Johnston to pursue the following claims, in relevant part:

> (c) any benefit entitlements that are vested as of the Separation Date pursuant to the terms of a Company-sponsored benefit plan governed by the federal law known as "ERISA;"
>
> (d) violation of any federal, state or local statutory and/or public policy right or entitlement that, by applicable law, is not waivable . . . .

*Id.* § 4.3

The Separation Agreement also contains an integration clause. The integration clause states "this Agreement . . . comprise[s] the entire agreement and understanding among the Parties, and supersede[s] and replace[s] any and all prior agreements . . . ." *Id.* § 13.6.

On March 2, 2018, Independence denied Johnston's claim for recalculation of her benefits using the final average compensation formula. Independence stated the plan unambiguously stated Johnston's pension benefits after her rehire would be calculated using the cash balance formula. Johnston appealed the decision and on September 24, 2018, her appeal was denied.

Johnston then filed the Complaint alleging three counts arising under ERISA: (1) a claim for benefits under the terms of the plan; (2) a breach of fiduciary duty and misrepresentation claim; and (3) a claim for disgorgement. Independence moved to dismiss the claims pursuant to Federal

Rule of Civil Procedure 12(b)(6). The Court granted Independence's motion in part and dismissed Count I because the words of the plan did not provide Johnston with the benefits she seeks. The breach of fiduciary duty and disgorgement claims remain.

Independence now moves for summary judgment on Johnston's two remaining claims. Independence argues Johnston's claims are barred by the waiver and release in the Separation Agreement. Johnston argues the Separation Agreement is not the entirety of the contract and by considering evidence outside of the Separation Agreement, the waiver did not apply to her breach of fiduciary claims. She also alternatively argues her breach of fiduciary duty claim is not waivable as a matter of law. The Court held a telephonic oral argument on Independence's motion on October 23, 2020.

**DISCUSSION**

The Court will grant Independence's motion because Johnston waived and released her remaining claims by signing the unambiguous Separation Agreement. Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id*. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The Separation Agreement unambiguously waives Johnston's breach of fiduciary duty and disgorgement claims. The Separation Agreement's broad general waiver and release clause

releases Independence "from any and all manner of actions and causes of actions, suits, debts, claims and demands whatsoever in law or in equity, which [Johnston] ever had, now has or hereafter may have, whether or not now known to [her], . . . by reason of any matter, cause, or thing whatsoever from the beginning of time until the execution date of this Agreement." Separation Agreement § 4. It goes on to waive claims for misrepresentation and "claims concerning or relating in any way to [Johnston's] employment relationship or the termination of [her] employment relationship with Independence . . . ." *Id.* Johnston's breach of fiduciary duty claim is premised on Independence representatives misrepresenting Johnston's pension plan benefits during her rehiring in 2001. *See* Pl.'s Am. Compl. ¶¶ 35–42. Not only is this a claim for misrepresentation waived by the express terms of the Separation Agreement but it is also a claim relating to Johnston's employment relationship with Independence. The disgorgement of profits claim is merely a separate form of relief stemming from the same breach of fiduciary duty claim. Therefore, the claims are waived unless they fall within an exemption.

The Separation Agreement does not exempt Johnston's claims from the general release and waiver. One exemption from waiver covers claims for "benefit entitlements" under ERISA-governed employee benefit plans, which are brought pursuant to § 502(a)(1)(B). *See* Separation Agreement § 4.3(c). Pursuant to ERISA, "[o]nly the words of the Plan itself can create an entitlement to benefits." *Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996). Claims asserting a contractual right under ERISA benefits plan are brought under ERISA § 502(a)(1)(B). *See Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 365–66 (E.D. Pa. 2014) (citing *Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 381 (3d Cir. 2003)); *see also* 29 U.S.C. § 1132(a)(1)(B) (allowing claims "to recover benefits due . . . under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

6

under the terms of the plan"). Claims brought under § 502(a)(1)(B) to enforce contractual rights existing under the terms of a plan are distinct from § 502(a)(3) claims, which seek to enforce *statutory* rights. *See Stanley v. George Wash. Univ.*, 394 F. Supp. 3d 97, 103 (D.D.C. 2019) ("Section 502(a)(2) and (a)(3) claims are generally brought in conjunction 'to enforce statutory ERISA rights,' whereas section 502(a)(1)(B) claims are brought to enforce 'contractual rights created by the terms of a benefit plan.'" (citations omitted)), *aff'd*, 801 F. App'x 792 (D.C. Cir. 2020). Here, Johnston's remaining claims seek to enforce her statutory rights, not her contractual rights to benefits under the plan. *See* Order, Jan. 16, 2020, ECF No. 22 (dismissing claim for benefits because Johnston was not entitled under the terms of the plan). As a result, her claims do not fall within the § 4.3(c) exemption.

Nor does Johnston's claim fall within the § 4.3(d) exemption of the Separation Agreement. That provision allows claims to proceed for "violation of any federal, state or local statutory and/or public policy right or entitlement that, by applicable law, is not waivable . . . ." Separation Agreement § 4.3(d). Johnston argues her claim falls within this exemption because ERISA § 410(a) states claims that "relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty" are not waivable. The Third Circuit has stated, however, that § 410(a) applies only to agreements attempting to alter a fiduciary's statutory duties and responsibilities under ERISA. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 593 (3d Cir. 2009). "[A]n individual release or covenant not to sue merely settles an individual dispute without altering a fiduciary's statutory duties and responsibilities." *Id.* Because a release "settles a dispute that the fiduciary did not fulfill its responsibility or duty on a given occasion," the release's effects "must be considered." *Id.* at 593–94 (quoting *Leavitt v. Nw. Bell Tel. Co.*, 921 F.2d 160, 161–62 (8th Cir. 1990)). Johnston's breach of fiduciary duty claim is waivable because the Separation Agreement

7

merely attempts to settle an individual dispute regarding Independence's statutory duty and does not alter its duty. Therefore, the exemption stated in § 4.3(d) does not apply here. And because Johnston's disgorgement of profits claim relies on success of the breach of fiduciary duty claim, it is not exempt either.

Despite the unambiguous language in the Separation Agreement, Johnston argues the waiver and release clause does not bar her breach of fiduciary duty claim because the Separation Agreement was not integrated. She argues that by looking at parol evidence, the record shows Independence told her she retained her ERISA rights in extrinsic communications. Whether a contract is integrated is a matter of law for the courts to decide. *See Kehr Packages, Inc. v. Fidelity Bank Nat. Ass'n.*, 710 A.2d 1169, 1173 (Pa. Super. Ct. 1998). A contract is a complete and integrated agreement "if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement . . . ." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (quoting *Gianni v. Russell & Co.*, 126 A. 791, 792 (Pa. 1924))*.* An integration clause is sufficient to indicate that a signed agreement is the final, complete version of a written contract. *See id.* "[I]f a court finds that the agreement in question is the parties' entire contract, 'the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract' is inadmissible to explain or vary the terms of the contract, unless: (1) a term is ambiguous and parol evidence is offered to explain or clarify the ambiguity; or (2) a term was omitted from the contract because of fraud, accident, or mistake." *SodexoMAGIC, LLC v. Drexel Univ.*, 333 F. Supp. 3d 426, 448 (E.D. Pa. 2018) (quoting *Yocca*, 854 A.2d at 437).

The Court finds the Separation Agreement is a complete and fully integrated contract.[1] Johnston agreed to execute the Agreement and "be legally bound by its terms," and in exchange Independence agreed to pay her severance payments. The object and extent of the parties' agreement was clear from the structure and language of the document. *See Yocca*, 854 A.2d at 436. Importantly, there is an integration clause which, in § 13.6, states in no uncertain terms, "this Agreement . . . comprise[s] the entire agreement and understanding among the Parties, and supersede[s] and replace[s] any and all prior agreements . . . ." *See* Cashman Decl. Ex. C at 10.

Because the Separation Agreement is a complete and integrated contract, parol evidence is "inadmissible to explain or vary the terms of the contract." *See Yocca*, 854 A.2d at 436. Unless a party alleges fraud, mistake, or accident in contract formation, parol evidence cannot be introduced. *See Yocca*, 854 A.2d at 498. And neither party alleges fraud, mistake, or accident regarding the Separation Agreement. The parol evidence rule thus applies and the Court will not look outside the terms of the Separation Agreement.[2] *See Butcher v. Gen. Motors Co.*, No. 14-353,

---

[1] Johnston argues the Separation Agreement is not fully integrated because Independence representatives stated in emails that she reserved her ERISA rights and these statements were intended to be part of the contract. The Court is not persuaded. In § 13.3 of the Separation Agreement, the contract could "only be modified by a written agreement duly signed by the persons authorized to sign agreements on behalf of the Parties to this Agreement." The outside correspondence is merely statements concerning Johnston's ongoing administrative appeal of her benefits recalculation and do not evidence an intent to modify the Separation Agreement.

[2] The Court notes that even considering Johnston's proffered parol evidence, the extrinsic statements are consistent with the terms of the Separation Agreement. In response to Johnston's inquiry as to whether submitting retirement paperwork would affect her ongoing pension benefits appeal, the Independence representative stated "[y]our election to commence distribution of your pension at this time will not impact your benefit calculation claim." *See* Cashman Decl. Ex. E, ECF No. 33-7. That statement is true. Signing the Separation Agreement did not affect Johnston's claim for benefits, i.e., her claim to entitlement to the final average compensation formula rather than the cash balance retirement formula. Johnston pursued her benefits appeal through administrative review and asserted her claim for benefits in the Complaint after signing the Separation Agreement.

9

2015 WL 867797, at *3 (W.D. Pa. Feb. 27, 2015) (applying parol evidence rule because contract had an integration clause and was unambiguous).

Having determined the Separation Agreement waives Johnston's claims, the Court must next determine whether she signed the waiver knowingly and voluntarily. *See Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988). The Third Circuit applies a totality of the circumstances test to determine whether a party entered a contract knowingly and voluntarily. *See id.* Courts faced with this issue must consider a number of factors including: (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his or her rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received the benefit of counsel; (6) whether there was an opportunity for negotiation of the terms; and (7) whether the consideration given in exchange for the release and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law. *See id.*

Applying the totality of the circumstances test in this case, Johnston signed the Separation Agreement knowingly and voluntarily. The Separation Agreement displays the release provisions in a separate section with an emphasized heading. *See Cuchara v. Gai-Tronics Corp.*, 129 F. App'x 728, 731 (3d Cir. 2005) (stating clear and specific language of waiver with bulleted claims listed weighed in favor of a knowing and voluntary release). Johnston is a sophisticated party who is well educated, worked for Independence for nearly 30 years, and navigated the administrative claims process of her pension benefits. *See Warren v. Mastery Charter Schs.*, 312 F. Supp. 3d 456, 462 (E.D. Pa. 2018) (finding release made knowingly and voluntarily when plaintiff was "an educated professional and there [was] no evidence that [s]he was unable to comprehend the

10

language of the [Agreement and] Release or the implication of waiving [her] claims" (alterations in original) (citations omitted)). Johnston had 45 days to review the Separation Agreement and seven days after signing to revoke her acceptance and agreement. The Separation Agreement explicitly advised Johnston to seek independent counsel before signing. The length of time to review and advice to seek independent counsel thus weigh in favor of finding Johnston knowingly and voluntarily waived her claims. *See Cuchara*, 129 F. App'x at 731 (stating 21 days to review release and advice to seek counsel weighed in favor of knowing and voluntary waiver). Also, the Separation Agreement permitted modification in writing showing the terms of the agreement could be negotiated. *See Cobb v. George Weston Bakers Distribution, Inc.*, No. 10-676, 2012 WL 2344452, at *7 (D.N.J. June 19, 2012) (finding an opportunity to negotiate weighs in favor of finding release made knowing and voluntary). Finally, Johnston received consideration—her pension benefits—for signing the Separation Agreement.

Johnston argues she did not knowingly and voluntarily sign the Separation Agreement because the Separation Agreement's general release and exemption clauses were ambiguous. An individual's subjective belief that a release does not waive claims is "insufficient to defeat summary judgment in the face of clear and unambiguous language." *See Morris v. Penn Mut. Life Ins. Co.*, No. 87-7063, 1989 WL 14063, at *3 (E.D. Pa. Feb. 21, 1989) (quoting *Cirillo v. Arco Chemical Co.*, 862 F.2d 448, 452–53 (3d Cir. 1988)). Waiver language is not unclear because it is broad or boilerplate. *See Dougherty v. TEVA Pharm. USA*, No. 05-2336, 2008 WL 508011, at *5 (E.D. Pa. Feb. 20, 2008) (citing *Easton v. Bristol-Myers Squibb Co.*, 289 F. Supp. 2d 604, 610 (E.D. Pa. 2003)). Language is clear when it is formatted for visibility and is understandable by a layperson. *See id.* (citations omitted).

As discussed, the Separation Agreement is unambiguous as to the extent of Johnston's waiver and release of claims. The release provision was separated and emphasized with a heading. The provision used broad language to release all of Johnston's claims. She had time to review the agreement and seek the advice of counsel. The statements from Independence representatives were also consistent with the Separation Agreement, which allowed Johnston to pursue her benefits claim while waiving all other claims. In sum, due to the clear and unambiguous language in the Separation Agreement, Johnston knew or should have known that she waived all claims against Independence (unless they were explicitly exempted). *See Bennet v. Independence Blue Cross*, No. 92-4249, 1993 WL 15603, at *4 (E.D. Pa. Jan. 13, 1993) (concluding totality of the circumstances showed release was knowingly and voluntarily entered, thus barring the plaintiff's claims).

Because the Separation Agreement unambiguously waives and releases Johnston's breach of fiduciary duty claim and she signed the Separation Agreement knowingly and voluntarily, her claim in Count II is waived and Independence is entitled to summary judgment on that claim. For the same reasons, Count III is waived because it is only a claim for a separate form of relief stemming from the underlying breach of fiduciary duty claim in Count II. The Court will thus grant Independence's motion for summary judgment.

**CONCLUSION**

Upon her retirement, Johnston signed a Separation Agreement waiving and releasing all claims against Independence. Johnston's remaining breach of fiduciary duty claim and claim for disgorgement fall within the broad waiver in the Separation Agreement. The Separation Agreement is clear and unambiguous and Johnston signed it knowingly and voluntarily. Accordingly, the Court will grant Independence's motion for summary judgment and enter judgment in its favor.

An appropriate order follows.

                                    BY THE COURT:

                                    <u>/s/ Juan R. Sánchez</u>
                                    Juan R. Sánchez, C.J.